VERSO LAW GROUP LLP
GREGORY S. GILCHRIST (Cal. Bar No. 111536)
RYAN BRICKER (Cal. Bar No. 269100)
SOPHY J. TABANDEH (Cal. Bar No. 287583)
PAYMANEH PARHAMI (Cal. Bar No. 335604)
KOURTNEY SPEER (Cal. Bar No. 348243)
565 Commercial Street, Fourth Floor
San Francisco, California 94111
Telephone:   (415) 534-0495
Facsimile:   (270) 518-5974
Email:       greg.gilchrist@versolaw.com
             ryan.bricker@versolaw.com
             sophy.tabandeh@versolaw.com
             paymaneh.parhami@versolaw.com
             kourtney.speer@versolaw.com

Attorneys for Plaintiff
PATAGONIA, INC.

```
                 F I L E D
         CLERK, U.S. DISTRICT COURT

               04/23/2025

     CENTRAL DISTRICT OF CALIFORNIA
     BY: _____ GSA _____ DEPUTY
```

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| PATAGONIA, INC., <br><br> Plaintiff, <br><br> v. <br><br> FRANCES AGNEW DBA FRAN CALISTA, FRAN CALISTA CLOSET LLC, ALL THINGS ALI, LLC, SHOP ORC LLC, ALISON RAE FEASTER, BROOKE L. HUNSUCKER DBA BROOKE LEANN ALLEN, BAILEY RENAE MILLER, JEFFREY FRANCIS MOORE, LEE WILLIAM, COLSON TY AGNEW, PUTIAN LOMANDO TRADING CO., LTD and DOES 1–10, <br><br> Defendants. | Case No. 2:25-cv-03283-CV-SK <br><br> **COMPLAINT FOR COUNTERFEITING, TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, DILUTION, AND COPYRIGHT INFRINGEMENT** <br><br> **JURY TRIAL DEMAND** <br><br> **FILED UNDER SEAL PURSUANT TO COURT ORDER DATED APRIL 18, 2025** |

This lawsuit is necessary to stop a widespread, opportunistic counterfeiting ring operated by Defendants through Facebook's "closed groups" and private Telegram channels.  Defendants use invitation-only and private groups on Facebook and Telegram to hide their illegal conduct from authorities and brand owners to

market their counterfeit products to members invited to join the groups. As part of the scheme, Defendants make sourcing trips to factories in China that produce obvious counterfeit, low-quality, Patagonia-branded products. Defendants distribute large quantities of those fake products to their "membership" (which appears to total nearly 300,000 individuals between the Facebook and Telegram groups) and collect substantial profits by deceiving customers and free-riding on Patagonia, Inc.'s ("Patagonia") reputation and brand.

In order to stop this systematic and widespread counterfeiting scheme, Patagonia alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Patagonia is a California corporation headquartered at 259 West Santa Clara Street, Ventura, California 93001. Patagonia has been designing, developing, and marketing clothing for more than fifty years. Today, Patagonia and the PATAGONIA brand are famous around the world for innovative apparel designs, quality products, and environmental and corporate responsibility.

2. Defendant Frances Agnew aka Frances Marie Agnew or Fran Calista ("Ms. Frances Agnew") is an individual who resides at 2707 Skimmer Point Way S, Gulfport, Florida 33707. Ms. Frances Agnew, and her other Facebook profiles under the names "Fran Calista," "Fran Calista's Closet," "Fran Calista Closet," "Fran N. Agnew," and "Fran Agnew," are administrators of the private Facebook group called "ORC Style Guide," which promotes, markets, offers, and sells counterfeit Patagonia products to consumers, including the tens of thousands of Facebook group members. Ms. Frances Agnew is also the administrator of a private Telegram group called Shop ORC which is used to promote, market, offer, and sale counterfeit Patagonia products to consumers including the nearly 80,000 members of this Telegram group. Ms. Frances Agnew is heavily involved in importing, shipping, offering, and selling counterfeit products, and, on information and belief, runs the ORC Style Guide Facebook group. Patagonia is informed and believes that

COMPLAINT
CASE NO. 2:25-CV-03283

- 2 -

Ms. Frances Agnew has been reported to the Federal Bureau of Investigation for engaging in counterfeiting and other illegal activities.  *See* **Exhibit A**.

3. Defendant Fran Calista Closet LLC ("Fran Calista Closet") is a Florida limited liability company with its principal place of business at 6150 Gulfport Blvd., Apt. 406, Gulfport, Florida 33707.  Ms. Frances Agnew is one of the owners and managers of Fran Calista Closet.  Fran Calista Closet is one of the administrators of the ORC Style Guide Facebook group—which is used to promote, market, offer, and sell counterfeit Patagonia products to consumers.  Patagonia is informed and believes that Fran Calista Closet participates in promoting, offering, importing, and selling counterfeit Patagonia products.

4. Defendant Shop ORC LLC ("Shop ORC") is a Florida limited liability company with its principal place of business at 6150 Gulfport Blvd., Apt. 406, Gulfport, Florida 33707.  Shop ORC's principal place of business is at an address owned by Ms. Frances Agnew.  Ms. Frances Agnew is the manager of Shop ORC, an identified seller of counterfeit Patagonia-branded products.  Shop ORC participates in promoting, offering, importing, and selling of counterfeit Patagonia products.

5. Defendant Jeffrey Francis Moore ("Mr. Moore") is an individual who resides at 2707 Skimmer Point Way S, Gulfport, Florida 33707.  Mr. Moore is the manager of Defendant All Things Ali, LLC, and Patagonia is informed and believes that he is Ms. Frances Agnew's spouse or partner.  Patagonia is also informed and believes that Mr. Moore participates in promoting, offering, importing, and selling of counterfeit Patagonia products.

6. Defendant Alison Rae Feaster ("Ms. Ali Feaster") is an individual who resides at 5505 High Bank Rd., Fort Worth, Texas 76126.  Ms. Ali Feaster is also known as Alison Rae Akers.  Ms. Ali Feaster is one of the administrators of the ORC Style Guide Facebook group.  Ms. Ali Feaster participates in promoting, offering, importing, and selling counterfeit Patagonia products, including through

COMPLAINT
CASE NO. 2:25-CV-03283

- 3 -

the ORC Style Guide Facebook group and Shop ORC Telegram group.

7.    Defendant Brooke L. Hunsucker aka Brooke Leann Allen ("Ms. Brooke Allen") is an individual who resides at 1203 62nd St., Meridian, Mississippi 39305. Ms. Brooke Allen is one of the administrators of the ORC Style Guide Facebook group. Ms. Brooke Allen participates in promoting, offering, importing, and selling counterfeit Patagonia products, including through the ORC Style Guide Facebook group and Shop ORC Telegram group.

8.    Defendant Bailey Renae Miller ("Ms. Bailey Miller") is an individual who resides at 6400 Aster Ave., Midland, Texas 79707. Ms. Bailey Miller participates in promoting, offering, importing, and selling counterfeit Patagonia products, including through the ORC Style Guide Facebook group and the Shop ORC Telegram group.

9.    Defendant Lee William ("Mr. William") is an individual who resides at an unknown address and is an identified seller of counterfeit Patagonia-branded products. Mr. William participates in promoting, offering, importing, and selling counterfeit Patagonia products.

10.    Defendant All Things Ali, LLC ("All Things Ali") is a Florida limited liability company with its principal place of business at 2707 Skimmer Point Way S, Saint Petersburg, Florida 33707. All Things Ali's principal place of business is at the same address as Ms. Frances Agnew's primary residence, and Ms. Frances Agnew's partner, Jeffrey Francis Moore, is All Things Ali's manager. Patagonia is informed and believes that All Things Ali participates in promoting, offering, importing, and selling counterfeit Patagonia products.

11.    Defendant Colson Ty Agnew ("Mr. Colson Agnew") is an individual who resides at 6150 Gulfport Blvd. S, Apt. 406, Gulfport, Florida 33707. Mr. Colson Agnew is the manager of Defendant Shop ORC LLC and Defendant Fran Calista Closet LLC. Additionally, Mr. Colson Agnew is an administrator of the Facebook group, ORC Style Guide and the son of Defendant Frances Agnew. Mr.

COMPLAINT
CASE NO. 2:25-CV-03283

- 4 -

Colson Agnew participates in promoting, offering, importing, and selling counterfeit Patagonia products, including through the ORC Style Guide Facebook group.

12. Defendant Putian Lomando Trading Co., Ltd., also believed to operate under the business name, Putian Lognmao Trading Co. Ltd., or Putian Licheng District Gold Carving and Jade Carving Company, ("Putian") is a Chinese entity with a principal place of business at China, Fujian Province, Putian City, Chengxiang District, No. 171 Dongsha Village, Donghai Town, 351100. Putian is an identified seller of counterfeit Patagonia-branded products. Putian participates in promoting, offering, importing, and selling counterfeit Patagonia products.

13. Patagonia is informed and believes that Does 1–10 are unknown individuals and/or entities who participated in the promoting, offering, importing, and selling of counterfeit Patagonia products.

14. The Defendants collectively are referred to as "Defendants" and each knowingly acted in concert with and conspired with the others in connection with all relevant conduct alleged in this Complaint.

15. Patagonia's counterfeiting and trademark claims arise under the Trademark Act of 1946 (the Lanham Act), as amended by the Trademark Dilution Revision Act of 2006 (15 U.S.C. §§ 1051, *et seq.*). Patagonia's claims for copyright infringement arise under the United States Copyright Act (17 U.S.C. §§ 101, *et seq.*). This Court has jurisdiction over such claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair competition), 17 U.S.C. § 501 (copyright), 28 U.S.C. § 1331 (federal question), and 15 U.S.C. § 1121 (Lanham Act). This Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).

16. This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privilege of doing business in California and this district.

17. Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(a)

COMPLAINT
CASE NO. 2:25-CV-03283

because a substantial part of the events giving rise to the claims asserted arose in this district (including promoting and selling products to consumers in the district.) Defendants sell and ship counterfeit products to customers in this district and promote their products to purchasers in this district through Facebook and Telegram groups and other shopping platforms which are all accessible to residents of this district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**Patagonia's History**

18.     Patagonia was founded in the early 1970s to design and sell climbing clothes and other active sportswear.  The company adopted the brand "PATAGONIA" to differentiate a related business that designed and manufactured climbing gear and tools.  Since at least 1973, the PATAGONIA brand has appeared on a multi-colored label inspired by a silhouette of the jagged peaks of the Mt. Fitz Roy skyline (the "P-6 logo").

19.     In the more than fifty years since Patagonia's business started, the PATAGONIA brand and P-6 logo have become among the most identifiable brands in the world.  Patagonia's products now include a wide range of high-quality apparel, accessories, and equipment, including T shirts, hoodies, sweatshirts, and fleece, as well as technical products designed for climbing, skiing and snowboarding, surfing, fly fishing, and trail running, which are sold around the world.

20.     Over the years, Patagonia has been recognized and honored for its business initiatives, including receiving the Sustainable Business Counsel's first "Lifetime Achievement Award."  In 1996, with an increased awareness of the dangers of pesticide use and synthetic fertilizers used in conventional cotton growing, Patagonia began the exclusive use of organically grown cotton and has continued that use for more than twenty years.  Patagonia was a founding member of the Fair Labor Association®, which is an independent multi-stakeholder

verification and training organization that audits apparel factories. Additionally, since 1985 Patagonia has pledged 1% of sales to environmental groups to preserve and restore our natural environment, donating more than $140 million to date. In 2002, Patagonia's founder, Yvon Chouinard, along with others, created a non-profit called 1% For the Planet® to encourage other businesses to do the same. Today, more than 1,200 member companies donate to more than 3,300 nonprofits through 1% For the Planet. In 2012, Patagonia became one of California's first registered Benefit Corporations, ensuring Patagonia could codify into its corporate charter consideration of its workers, community, and the environment. In 2022, Patagonia's owners donated their holdings in the company to a Purpose Trust and nonprofits dedicated to fighting the environmental crisis and defending nature.

**Patagonia's Trademarks**

21. Patagonia owns numerous registrations for its distinctive P-6 logo and PATAGONIA trademarks, covering a wide-ranging assortment of products. Among these are the following U.S. trademark registrations:

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| **PATAGONIA** | 1189402 / Feb. 9, 1982 | Men's and Women's Clothing-Namely, Sweaters, Rugby Shirts, Walking Shorts, Trousers, Jackets, Mittens, Hoods and Rainwear | 08/1974 |
| | 1294523 / Sept. 11, 1984 | Men's, Women's and Children's Clothing-Namely, Jackets, Pants, Vests, Gloves, Pullovers, Cardigans, Socks, Sweaters, Underwear, Shirts, Shorts, Skirts and Belts | 08/1974-1981 |

COMPLAINT
CASE NO. 2:25-CV-03283

- 7 -

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| | 1547469 / July 11, 1989 | Men's, Women's and Children's Clothing- Namely, Jackets, Pants, Shirts, Sweaters, Vests, Skirts, Underwear Tops and Bottoms, Socks, Gloves, Mittens, Hats, Face Masks, Balaclava, Gaiters, Suspenders, and Belts | 08/1974-1981 |
| | 1775623 / June 8, 1993 | Luggage back packs, and all-purpose sports bags | 08/1988 |
| PATAGONIA | 1811334 / Dec. 14, 1993 | Luggage, back packs, fanny packs and all-purpose sport bags, footwear, ski bags and ski gloves | 08/1990 |
| PATAGONIA | 2260188 / July 13, 1999 | Computerized on-line ordering activities in the field of clothing and accessories; Providing information in the field of technical clothing and accessories for use in recreational, sporting and leisure activities; providing information in the field of existing and evolving environmental issues | 10/1995 |
| PATAGONIA | 2662619 / Dec. 17, 2002 | Retail store services featuring clothing, footwear, luggage and a wide variety of sporting goods and accessories | 06/1986 |
| PATAGONIA | 5491401 / June 12, 2018 | Reusable bottles sold empty; insulated containers for food or beverage for domestic use; cups, mugs and growlers | 09/2014 |
| PATAGONIA | 5561006 / Sept. 11, 2018 | Stickers; paper banners; fiction and non-fiction books on a variety of topics; posters; non-magnetically encoded gift cards; photographs | 12/1991 |

These registrations for the PATAGONIA mark and logos are in full force and effect. The registrations have become incontestable under 15 U.S.C. § 1065. A color image of the P-6 logo follows:



Collectively, these marks, Patagonia's other registered trademarks for the PATAGONIA mark and P-6 logo, and its common law marks for the PATAGONIA mark and P-6 logo are referred to as the "PATAGONIA trademarks." Patagonia also owns a registered copyright (Registration No. VA 1–801–788) for the P-6 logo.

22. The PATAGONIA trademarks are distinctive, arbitrary and fanciful, entitled to the broadest scope of protection, and certain of the PATAGONIA trademarks are registered worldwide.

23. For many years prior to the events giving rise to this Complaint and continuing to the present, Patagonia annually has spent enormous amounts of time, money, and effort advertising and promoting the products on which its PATAGONIA trademarks are used. PATAGONIA brand products are advertised in a variety of contexts and media, including in print and on the Internet. In addition to advertising by Patagonia, consumers learn of the brand through "earned media" because Patagonia is often in the news or social media platforms for its environmental advocacy. The PATAGONIA trademarks are also advertised and promoted and presented at point of sale by numerous retailers. Consumers, accordingly, are exposed to the PATAGONIA trademarks in a wide range of shopping and post-sale contexts.

24. Patagonia has sold its PATAGONIA brand products all over the world

and throughout the United States, including California.  Through its promotion and investment in its brand and extensive sales, publicity, awards, and leadership in sustainable sourcing practices, Patagonia has acquired enormous goodwill in its PATAGONIA trademarks.  The PATAGONIA trademarks are famous within the meaning of the Trademark Dilution Revision Act, enjoy strong consumer recognition, and are recognized around the world and throughout the United States by consumers as signifying high-quality products made by a responsible company.

**Defendants' Promotion and Sale of Counterfeit Products**

26.    In blatant disregard of Patagonia's rights in the PATAGONIA trademarks—and without authorization from Patagonia—Defendants have conspired together to engage in a widespread counterfeiting operation through which they import, promote, offer for sale, and sell counterfeit Patagonia products, including apparel, bags, and other accessories, bearing one or more reproductions of Patagonia's federally registered PATAGONIA trademarks (the "Counterfeit Products").

26.    Patagonia's investigation revealed that Defendants utilize at least two private, invitation-only Facebook groups "ORC Style Guide" and "ORC Shop" along with at least one private Telegram group "Shop ORC" to operate their counterfeiting scheme.  Patagonia is informed and believes that Defendants may use additional groups that are unknown to Patagonia at this time.

27.    Defendant Ms. Frances Agnew runs the private Facebook group called, ORC Style Guide, which currently has 63,300 members.  ORC Style Guide was created on October 4, 2016, and has had various names over the years, including "AliExpress Teens and Tweens":





Ms. Frances Agnew, and her other Facebook profiles under the names "Fran Calista," "Fran Calista's Closet," "Fran Calista Closet," "Fran N. Agnew," and "Fran Agnew," are administrators of ORC Style Guide.  Ms. Frances Agnew works with her companies, Fran Calista Closet, Shop ORC, and, on information and belief, All Things Ali, to import, promote, and sell the Counterfeit Products.  Defendants Ms. Ali Feaster, Ms. Brooke Allen and Mr. Colson Agnew are also administrators of the ORC Style Guide Facebook group, and, along with Ms. Bailey Miller, Mr. Moore, Mr. William and Putian participate in promoting, offering for sale, and selling the Counterfeit Products.  Examples of the Counterfeit Products are below:

COMPLAINT
CASE NO. 2:25-CV-03283

- 12 -











28.     Defendants post images of the Counterfeit Products in the ORC Style Guide closed Facebook group and pretend they are providing "reviews" of the products, but in reality, Defendants, in the comments sections, provide the information necessary to direct consumers to purchase the Counterfeit Products through other platforms and websites, such as Shopify. See examples below:



29.    Patagonia is informed and believes that Defendants also promote, offer for sale, and sell the Counterfeit Products through a second related Facebook group called "ORC Shop," which currently has 113,800 members.  Patagonia was unable to access this group because ORC Shop is not accepting any new members at this time. Patagonia's investigation revealed that the ORC Shop Facebook group's rules, which are visible to the public, directs members to download the AliExpress App and create an account in order to purchase counterfeit products.



30.    In the ORC Style Guide Facebook group, Ms. Frances Agnew encourages members to join a related private Telegram group called "Shop ORC," which currently has 77,736 members:





Through this Telegram group, Defendants also promote, offer for sale, and sell the Counterfeit Products.  See examples below:





31.    Defendants use the ORC Style Guide Facebook group and Shop ORC Telegram group to direct consumers to public websites where Defendants offer the Counterfeit Products by identifying them in code rather than referring to them by name or description, in an obvious attempt to disguise their product listings.  For example, Defendants will send a message in the private Telegram group advertising the Counterfeit Products along with a URL containing a reference code.  However, when consumers click the URL, the public online storefront does not mention Patagonia (either in the text or images), and in some instances the listing shows an entirely different product (e.g., unbranded shoes).  Instead, the product listing is identified by the corresponding code (e.g., "PDD-277").  See example below:

 

32.     An additional example of Defendants' "code marketing" is shown below.  In the private Telegram group, Defendant Brooke Allen promoted a counterfeit Patagonia jacket and provided the URL (highlighted below) to members of the group, including Patagonia's investigator.  The URL to the public storefront referenced "universal-goods-shoes," not the Patagonia jacket that was promoted to the private Telegram Group.  The investigator used the URL which took the investigator to a listing for the "65 Universal goods" shoe as shown in the image below.  The investigator made a purchase from this listing and ultimately received the counterfeit Patagonia jacket that was promoted by Defendant Brooke Allen to the Telegram group.

COMPLAINT
CASE NO. 2:25-CV-03283

- 24 -

| Telegram Message Promoting Counterfeit Patagonia Jacket | Online Storefront Using Code Marketing to Sell Counterfeit Patagonia Jacket |
|---|---|
|  | |

33. Patagonia's investigation has revealed that Defendants maintain various online stores, including on Shopify. Defendants provide links to the various Shopify storefronts in the Facebook and Telegram groups discussed above. Defendants routinely shut down these online stores and create new ones, in an attempt to disguise and erase evidence of their counterfeiting scheme.

34. Patagonia is informed and believes that Ms. Frances Agnew also travels to China periodically to obtain the Counterfeit Products, and posts pictures promoting her travels on her Facebook page and in the ORC Style Guide Facebook group. Patagonia's investigation revealed that Defendants Ms. Bailey Miller, Ms. Brooke Allen, and Ms. Ali Feaster frequently promote and advertise Patagonia-branded products in the ORC Style Guide Facebook group and the Shop ORC Telegram group. Patagonia's investigation also revealed that Defendants Mr. William, Putian, and Ms. Frances Agnew's company, Shop ORC LLC, sell Patagonia-branded products. Additionally, Patagonia is informed and believes that Ms. Frances Agnew conspires with her companies, Fran Calista Closet, Shop ORC and All Things Ali; her partner, Mr. Moore; the other administrators and sellers in the ORC Style Guide and ORC Shop Facebook groups (including Ms. Bailey Miller, Ms. Brooke Allen, Mr. Colson Agnew and Ms. Ali Feaster); and Putian and Mr. William to import, promote, offer for sale, and sell the Counterfeit Products to consumers in the U.S.

35. Patagonia's investigation also revealed that Defendants use common social media groups, online storefronts, email addresses, shippers, warehouses, code-based marketing, and payment mechanisms—further evidencing their conspiracy to engage in this counterfeiting scheme.

36. Because of the private nature of the Facebook and Telegram groups and Defendants' shifting sales tactics as described in this Complaint, Patagonia only recently became aware of Defendants' counterfeiting operation.

37. Defendants engaged in the conduct described in this Complaint

COMPLAINT
CASE NO. 2:25-CV-03283

willfully, intentionally, and/or maliciously. Defendants' counterfeiting scheme is widespread and systematic. It utilizes private groups on Facebook and Telegram which are not publicly accessible. This permits Defendants to hide their illegal commercial activities. Patagonia is informed and believes that Defendants travel to China to obtain counterfeit products and/or have the products shipped from China, sourcing them from obviously unauthorized sources. Patagonia is informed and believes that Defendants conspire with a convicted counterfeiter, Kevin "Peter" Wang, to import, store, ship and/or deliver the Counterfeit Products. Under these circumstances, Defendants could not have believed the counterfeits they were selling and promoting were genuine Patagonia branded products.

38. Patagonia has not licensed, authorized, sponsored, endorsed, or approved the Counterfeit Products Defendants have manufactured, distributed, imported, promoted, offered for sale, and sold. Patagonia is not associated, affiliated, or connected with Defendants, and has not licensed, authorized, sponsored, endorsed, or approved Defendants' conduct in any way.

39. The Counterfeit Products are visually identical to and compete with goods sold by Patagonia. The Counterfeit Products, however, are of a vastly inferior quality to Patagonia's genuine products, causing further harm to Patagonia, its reputation and goodwill, and the PATAGONIA trademarks.

40. Defendants' copying of Patagonia's copyrighted P-6 logo violates Patagonia's rights in the design and has caused damage to Patagonia.

41. Defendants' wholesale copying of Patagonia's trademarks is likely to deceive, confuse, and mislead actual and prospective consumers regarding the source of the Counterfeit Products, including whether the Counterfeit Products are genuine Patagonia products, and/or whether Patagonia has sponsored, authorized, or is somehow affiliated with Defendants. Such consumers are likely to be deceived, confused, and misled before, during and after purchase. Patagonia, consequently, must protect its goodwill and famous trademarks by seeking an injunction against

COMPLAINT
CASE NO. 2:25-CV-03283

Defendants' further promotion, distribution, offer, and sale of the Counterfeit Products.

42.    Patagonia's investigation revealed that Defendants, in furtherance of their counterfeiting scheme, have sourced, marketed, and sold substantial quantities of the Counterfeit Products, and have profited and continue to profit from such sales.

43.    Defendants' actions have caused and will cause Patagonia irreparable harm for which money damages and other remedies are inadequate.  Unless Defendants are restrained by this Court, Defendants will continue expanding their illegal activities and otherwise continue to cause irreparable damage and injury to Patagonia by, among other things:

a.    Depriving Patagonia of its statutory rights to use and control use of its trademarks;

b.    Creating a likelihood of confusion, mistake, and deception among consumers and the trade as to the source of the Counterfeit Products;

c.    Causing the public falsely to associate Patagonia with Defendants and/or their Counterfeit Products;

d.    Causing the public falsely to believe Patagonia has collaborated with Defendants, entered a co-branding relationship with Defendants, or is otherwise associated with Defendants and/or their Counterfeit Products;

e.    Causing incalculable and irreparable damage to Patagonia's goodwill and diluting the capacity of its famous PATAGONIA trademarks to differentiate its products from those of its competitors;

f.    Causing incalculable and irreparable damage to Patagonia's licensing and collaboration programs, and to Patagonia's ability to control its brand partnerships and to associate itself with entities who are specifically aligned to Patagonia's company mission; and

g.    Causing Patagonia to lose sales of its genuine PATAGONIA

products.

44.    Accordingly, in addition to other relief, Patagonia is entitled to injunctive relief against Defendants.

## FIRST CLAIM

## FEDERAL TRADEMARK COUNTERFEITING

## (15 U.S.C. §§ 1114–1117)

45.    Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

46.    Defendants have used in commerce marks that are identical to, or substantially indistinguishable from, the federally registered PATAGONIA trademarks, in connection with goods falling within the scope of Plaintiff's federal registrations.

47.    Defendants' actions demonstrate an intentional, willful, and malicious intent to counterfeit the federally registered PATAGONIA trademarks in violation of 15 U.S.C. § 1116(d).

48.    Because Defendants have caused, and are likely to continue causing, substantial injury to the public and to Patagonia for which Patagonia has no adequate remedy at law; because this is an exceptional case; and as a direct and proximate result of Defendants' conduct, Patagonia is entitled to Defendants' unlawful profits and Patagonia's damages, and treble the amount of its damages and Defendants' profits, and to an award of attorneys' fees under 15 U.S.C. § 1117(a), or to statutory damages and reasonable attorneys' fees under 15 U.S.C. § 1117(c), as well as seizure of the counterfeit goods under 15 U.S.C. § 1116, including seizure of any labeling, documents, proceeds, and other materials related to production, promotion, or sales of products bearing any mark or design identical to or indistinguishable from the PATAGONIA trademarks.

49.    Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Defendants to stop promoting, distributing, offering, and

selling the Counterfeit Products, and any other mark or design similar to the PATAGONIA trademarks.

## SECOND CLAIM

## FEDERAL TRADEMARK INFRINGEMENT

## (15 U.S.C. §§ 1114–1117)

50.    Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

51.    Defendants have used, in connection with the sale, offering for sale, distribution, or advertising of their Counterfeit Products, words and symbols that infringe upon Patagonia's PATAGONIA trademarks.

52.    These acts of trademark infringement have been committed with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1114.

53.    As a direct and proximate result of Defendants' conduct, Patagonia is entitled to recover Defendants' unlawful profits and Patagonia's damages, and treble the amount of its damages and Defendants' profits, and to an award of attorneys' fees under 15 U.S.C. § 1117(a).

54.    Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Defendants to stop promoting, distributing, offering, and selling the Counterfeit Products, and any other mark or design similar to the PATAGONIA trademarks.

## THIRD CLAIM

## FEDERAL UNFAIR COMPETITION

**(False Designation of Origin and False Description – 15 U.S.C. § 1125(a))**

55.    Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

56.    Defendants' conduct as alleged in this Complaint constitutes the use of symbols or devices tending falsely to describe the Counterfeit Products, within the

COMPLAINT
CASE NO. 2:25-CV-03283

meaning of 15 U.S.C. § 1125(a)(1).  Defendants' conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or approval of the Counterfeit Products to the detriment of Patagonia and in violation of 15 U.S.C. § 1125(a)(1).

57. As a direct and proximate result of Defendants' conduct, Patagonia is entitled to recover up to treble the amount of Defendants' unlawful profits and Patagonia's damages, and an award of attorneys' fees under 15 U.S.C. § 1117(a).

58. Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Defendants to stop promoting, distributing, offering, and selling the Counterfeit Products, and using any other mark or design similar to the PATAGONIA trademarks.

## FOURTH CLAIM

## FEDERAL DILUTION OF FAMOUS MARKS

### (Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c))

59. Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

60. Patagonia's PATAGONIA trademarks, including the PATAGONIA mark and P-6 logo, are distinctive and famous within the meaning of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c), and were famous prior to Defendants' adoption of the Counterfeit Products.

61. Defendants' conduct is likely to cause dilution of Patagonia's PATAGONIA trademarks by diminishing their distinctiveness in violation of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).

62. As a direct and proximate result of Defendants' conduct, Patagonia is entitled to recover up to treble the amount of Defendants' unlawful profits and Patagonia's damages, and an award of attorneys' fees under 15 U.S.C. §§ 1116(a), 1117(a), and 1125(c).

63. Patagonia is entitled to injunctive relief pursuant to 15 U.S.C.

COMPLAINT
CASE NO. 2:25-CV-03283

§§ 1116(a) and 1125(c) that require Defendants to stop promoting, distributing, offering, and selling the Counterfeit Products, and using any other mark or design similar to the PATAGONIA trademarks.

## FIFTH CLAIM

## FEDERAL COPYRIGHT INFRINGEMENT

**(17 U.S.C. §§ 101, *et seq*., and 17 U.S.C. §§ 501, *et seq*.)**

64. Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

65. Patagonia owns the copyright in its P-6 logo, which is federally registered and was registered prior to Defendants' copying.

66. Defendants have copied, advertised, offered for sale, and/or sold substantially similar copies of the P-6 logo without Patagonia's authorization or permission and in violation of Patagonia's exclusive rights in its copyright.

67. Defendants' unlawful reproduction, advertisement, distribution, and/or sale of Patagonia's proprietary design constitutes copyright infringement. Patagonia alleges that Defendants acted intentionally and in bad faith when they reproduced Patagonia's copyrighted work (in identical or substantially similar form), and advertised, distributed, displayed, and/or sold the Counterfeit Products.

68. Defendants' infringement alleged in this Complaint has caused and, if not enjoined, will continue to cause Patagonia to suffer irreparable harm for which there is no adequate remedy at law, and has also caused damage to Patagonia in an amount which cannot be accurately computed at this time but will be proven at trial.

69. As a direct and proximate result of Defendants' conduct, Patagonia is entitled to injunctive relief, as well as actual damages plus any profits earned by Defendants as a result of their infringements, or statutory damages of up to $150,000 for each work infringed, at Patagonia's election, pursuant to 17 U.S.C. § 504.

COMPLAINT
CASE NO. 2:25-CV-03283

## SIXTH CLAIM

## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

## UNDER CALIFORNIA STATUTORY LAW

**(Cal. Bus. & Prof. Code §§ 14200 *et seq*.; Cal. Bus. & Prof. Code § 17200 *et seq*.)**

70. Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

71. Patagonia is the owner of numerous registrations for the PATAGONIA trademarks, as well as common law rights in those marks.

72. Defendants have infringed upon Patagonia's PATAGONIA trademarks without the consent of Patagonia and in connection with the sale, offering for sale, distribution, or advertising of their Counterfeit Products.

73. Defendants' infringement of Patagonia's PATAGONIA trademarks is likely to cause confusion, mistake, and deception as to the source of the origin of Defendants' offerings.

74. Defendants use the PATAGONIA trademarks to enhance the commercial value of Defendants' offerings.

75. Defendants' acts violate Patagonia's trademark rights under California Business & Professions Code §§ 14245 *et seq*.

76. Defendants' conduct as alleged in this Complaint also constitutes "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising" within the meaning of California Business & Professions Code §§ 17200 *et seq*.

77. Patagonia is entitled to monetary damages and injunctive relief prohibiting Defendants from selling the Counterfeit Products, or any other products bearing a mark or design that is likely to be confused with the PATAGONIA trademarks.

78. Without injunctive relief, Patagonia has no means by which to control

COMPLAINT
CASE NO. 2:25-CV-03283

- 33 -

the continuing injury to its reputation and goodwill or that of its PATAGONIA trademarks. Patagonia has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Patagonia if it loses the ability to control its marks.

79. Because Defendants' actions have been committed willfully, maliciously, and intentionally, Patagonia is entitled to treble the amount of Defendants' unlawful profits and Patagonia's damages under California Business & Professions Code § 14250.

80. Because Defendants' conduct has been undertaken willfully, intentionally, and in reckless disregard of the possible injurious consequences, Patagonia is entitled to exemplary or punitive damages under California Civil Code § 3294.

## SEVENTH CLAIM

## TRADEMARK DILUTION UNDER CALIFORNIA LAW

### (Cal. Bus. & Prof. Code § 14247)

81. Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

82. Patagonia owns valid and protectable rights in its PATAGONIA trademarks, including the PATAGONIA mark and P-6 logo.

83. The PATAGONIA trademarks—registered marks in the state of California—are distinctive and famous within the meaning of the California Model State Trademark Law and California Business & Professions Code § 14247, in that it is a household brand in California, and were famous prior to Defendants' use of the Counterfeit Products.

84. Defendants' acts are likely to dilute the distinctive quality of the PATAGONIA trademarks. Defendants' acts therefore constitute trademark dilution under California Business & Professions Code § 14247, the analogous statutes of other states, and under California common law.

COMPLAINT
CASE NO. 2:25-CV-03283

- 34 -

85. Patagonia is entitled to monetary damages and injunctive relief prohibiting Defendants from promoting, offering, or selling the Counterfeit Products, and using any other mark or design similar to the PATAGONIA trademarks. Without injunctive relief, Patagonia has no means by which to control the continuing dilution of the PATAGONIA trademarks. Patagonia has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Patagonia for such harm.

86. Because Defendants' actions have been committed willfully, maliciously, and intentionally, Patagonia is entitled to treble the amount of Defendants' unlawful profits and Patagonia's damages under California Business & Professions Code § 14250.

87. Because Defendants' conduct has been undertaken willfully, intentionally, and in reckless disregard of the possible injurious consequences, Patagonia is entitled to exemplary or punitive damages under California Civil Code § 3294.

## EIGHTH CLAIM

## TRADEMARK INFRINGEMENT UNDER CALIFORNIA COMMON LAW

88. Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

89. Patagonia owns valid and protectable rights in its PATAGONIA trademarks at common law.

90. Defendants' conduct is likely to cause confusion, to cause mistake, or to deceive as to the source of goods offered by Defendants, or as to affiliation, connection, association, sponsorship, or approval of such goods and services, and constitutes infringement of Patagonia's PATAGONIA trademarks at common law.

91. Defendants infringed Patagonia's PATAGONIA trademarks with knowledge and intent to cause confusion, mistake, or deception.

92. Defendants' conduct is aggravated by that kind of willfulness,

COMPLAINT
CASE NO. 2:25-CV-03283

- 35 -

wantonness, malice, and conscious indifference to the rights and welfare of Patagonia for which California law allows the imposition of exemplary damages.

93. As a direct and proximate result of Defendants' activities, Patagonia has suffered substantial damage.

94. Unless restrained and enjoined, the conduct of Defendants will further impair the value of the PATAGONIA trademarks and Patagonia's business reputation and goodwill. Patagonia has no adequate remedy at law.

95. Patagonia is entitled to monetary damages and injunctive relief prohibiting Defendants from promoting, offering, or selling the Counterfeit Products, and using any other mark or design similar to the PATAGONIA trademarks.

96. Without injunctive relief, Patagonia has no means by which to control the continuing injury to its reputation and goodwill or that of its PATAGONIA trademarks. Patagonia has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Patagonia if it loses the ability to control its marks.

97. Because Defendants' actions have been committed willfully, maliciously, and intentionally, Patagonia is entitled to recover reasonable attorneys' fees and compensatory and punitive damages (*see* Cal. Civ. Code § 3294).

### PRAYER FOR JUDGMENT

WHEREFORE, Patagonia prays that this Court grant it the following relief:

1. Adjudge that Defendants have promoted, distributed, offered and sold products bearing counterfeit reproductions of Patagonia's federally registered trademarks;

2. Adjudge that Defendants have infringed the PATAGONIA trademarks in violation of Patagonia's rights under 15 U.S.C. § 1114;

3. Adjudge that Defendants have infringed the PATAGONIA trademarks in violation of California statutory law;

COMPLAINT
CASE NO. 2:25-CV-03283

- 36 -

4.     Adjudge that Defendants have infringed Patagonia's common law rights in the PATAGONIA trademarks;

5.     Adjudge that Defendants have competed unfairly with Patagonia in violation of Patagonia's rights under 15 U.S.C. § 1125(a);

6.     Adjudge that Defendants have competed unfairly with Patagonia in violation of California statutory law;

7.     Adjudge that Defendants' activities are likely to dilute Patagonia's famous PATAGONIA trademarks in violation of Patagonia's rights under 15 U.S.C. § 1125(c) and California law;

8.     Adjudge that Defendants have infringed Patagonia's copyright rights in its P-6 design;

9.     Adjudge that Defendants' actions, as outlined in the preceding paragraphs, have been willful, intentional, and conducted in reckless disregard of the possible injurious consequences;

10.     Adjudge that Defendants and their agents, employees, attorneys, successors, assigns, affiliates, and joint venturers, and any person(s) in active concert or participation with them, and/or any person(s) acting for, with, by, through or under them, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

a.     Manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, advertising, or promoting any goods or services that display any words or symbols that bear reproductions or so resemble the PATAGONIA trademarks as to be likely to cause confusion, mistake, or deception, on or in connection with any product that is not authorized by or for Patagonia, including, without limitation, the Counterfeit Products.

b.     Manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, advertising, or promoting any goods or services that display any words or symbols that so resemble the PATAGONIA trademarks as to be likely

to cause confusion, mistake, or deception, on or in connection with any product that is not authorized by or for Patagonia;

c.   Using any word, term, name, symbol, device, or combination that causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of Defendants or their products with Patagonia or its products, or as to the origin of Defendants' goods, or any false designation of origin, false or misleading description or representation of fact, or any false or misleading advertising;

d.   Further infringing the rights of Patagonia in and to its PATAGONIA trademarks, or otherwise damaging Patagonia's goodwill or business reputation;

e.   Further diluting the famous PATAGONIA trademarks;

f.   Otherwise competing unfairly with Patagonia in any manner;

g.   Further infringing Patagonia's copyright rights in its P-6 logo design, including by reproducing, distributing, or displaying such logo or any other logo or design that is substantially similar to the P-6 logo; and

h.   Continuing to perform in any manner whatsoever any of the other acts complained of in this Complaint;

11.   Adjudge that Defendants are prohibited from applying to register any trademark or service mark which is likely to be confused with, or that dilutes the distinctive quality of, Patagonia's PATAGONIA trademarks;

12.   Adjudge that Defendants be required immediately to deliver to Patagonia's counsel their entire inventory of counterfeit and infringing products, including without limitation, patches and any other products, packaging, labeling, advertising and promotional material, and all plates, patterns, molds, matrices, files, data, and other material for producing or printing such items, that are in their possession or subject to their control and that infringe Patagonia's trademarks as alleged in this Complaint;

COMPLAINT
CASE NO. 2:25-CV-03283

13.   Adjudge that Defendants, within thirty (30) days after service of the Court's judgment, be required to file with this Court and serve upon Patagonia's counsel a written report under oath setting forth in detail the manner in which they have complied with the judgment;

14.   Adjudge that Patagonia recover from Defendants its damages and lost profits, and Defendants' profits in an amount to be proven at trial;

15.   Adjudge that Patagonia is entitled to recover statutory damages from Defendants based on Defendants' willful counterfeiting;

16.   Adjudge that Defendants be required to account for any profits that are attributable to their illegal acts, and that Patagonia be awarded (1) Defendants' profits and (2) all damages sustained by Patagonia, under 15 U.S.C. § 1117, plus prejudgment interest;

17.   Adjudge that the amounts awarded to Patagonia pursuant to 15 U.S.C. § 1117 shall be trebled;

18.   Adjudge that Patagonia recover from Defendants its damages based on Defendants' copyright infringement, or statutory damages at Patagonia's election;

19.   Adjudge that Patagonia recover punitive or exemplary damages from Defendants based on Defendants' conduct done willfully, intentionally, and in reckless disregard of its possible injurious consequences;

20.   Order an accounting of and impose a constructive trust on all of Defendants' funds and assets that arise out of its counterfeiting, infringing, and dilutive activities;

21.   Adjudge that Patagonia be awarded its costs and disbursements incurred in connection with this action, including Patagonia's reasonable attorneys' fees and investigative expenses; and

22.   Adjudge that all such other relief be awarded to Patagonia as this Court deems just and proper.

COMPLAINT
CASE NO. 2:25-CV-03283

DATED: April 15, 2025

Respectfully submitted,

VERSO LAW GROUP LLP

By: */s/ Gregory S. Gilchrist*
GREGORY S. GILCHRIST
RYAN BRICKER
SOPHY J. TABANDEH
PAYMANEH PARHAMI
KOURTNEY SPEER

Attorneys for Plaintiff
PATAGONIA, INC.

## **DEMAND FOR JURY TRIAL**

Patagonia, Inc. demands that this action be tried to a jury.

DATED:  April 15, 2025          Respectfully submitted,

                                VERSO LAW GROUP LLP


                                By:  */s/ Gregory S. Gilchrist*
                                     GREGORY S. GILCHRIST
                                     RYAN BRICKER
                                     SOPHY J. TABANDEH
                                     PAYMANEH PARHAMI
                                     KOURTNEY SPEER

                                Attorneys for Plaintiff
                                PATAGONIA, INC.

# EXHIBIT A

## FILED UNDER SEAL PURSUANT TO COURT ORDER DATED APRIL 18, 2025

**URL**

https://www.ripoffreport.com/reports/fran-calista/internet/fran-calista-fran-calista-is-a-criminal-running-organized-cyber-crimes-that-includes-wire-1393151

**Timestamp**

Thu Apr 10 2025 11:28:20 GMT-0700 (Pacific Daylight Time)



Coronavirus Covid-19 order masks now??

**Political Signs Must Go!**



*ED Magedson – Founder Ripoff Report*

**Flood Damaged Vehicles Unscrupulous Auto Dealers**



How to identify hurricane damaged trucks, cars RV's motor cycles boats: Ripoff Report Investigates

**HELPFUL RESOURCES**
**Covid-19 coronavirus**

Identifying coronavirus Covid-19 rip-off scams

**Featured Ripoff Reports**

Seemray failed to deliver the promised services and stopped responding to messages. Cleveland OH

Salon LDJ

is a scam. Deceitful Practices/Rude Managment Pleasant View Tennessee

BTC Miner

issue with withdrawal Internet

Frederick

Matson Kelley - Attorney at law robbed my family of our three homes, by abusing their court appointed positions. Wailuku, Hawai'i

Becky Sara



and ripping on major brands by counterfeiting! St. Petersburg Florida

*Consumer Comment: Frances Marie Agnew & Jeffrey Francis Moore*

They're awesome! (0)    Super Helpful (0)

They're not great but not a Ripoff (0)    Total Ripoff (0)

---

**REBUTTAL BOX™ | Respond to this Report! | Consumer Comment** ⍰

Repair your reputation the right way
**Corporate Advocacy Program**

Show customers why they should trust your business over your competitors...

Add Rebuttal to this Report ⍰    File New Report ⍰

Fran Calista of St. Petersburg FL. is running an organized crime organization in Facebook groups consisting of admins and moderators. She is committing heinous acts of illegal counterfeiting fraud and ripping off the United States, which prohibits the production and sale of counterfeit **branded** items and ripping off American and other branded companies such as *Louis Vuitton, Gucci, Nike, Tiffany and Co., Adidas, Beats by Dre, Yeti, Michael Kors, Tory Burch* and many more.

Fran Calista is the head of many Facebook groups (AliExpress Men's Closet, AliExpress Baby Kid, AliExpress Home, Craft & Gifts, AliExpress Let's Party, AliExpress All About the Mouse, AliExpress Resale and Handmade Market, AliExpress Tweens & Teens, AliExpress Closet & Makeup, AliExpress Campus, Shades of Ali-XXXExpress Ladies Only, AliExpress Curves Ahead); which after exposure I'm sure she will change some of these groups or go secret.

Fran and her organized crime organization (admins and moderators see attached screenshots) run these groups as affiliates for AliExpress. She works with what she labels "*Trusted Sellers*" to which she has established a relationship to create and promote hidden links (screenshots provided) and/or boldly promotes the sale of counterfeit branded items from these "*Trusted Sellers*" of AliExpress to sell to group members.

As an affiliate of AliExpress is a alleged that Fran Calista and her crime organization are grossing well over $50K per month for their illegal activity, fraud, crimes and blatant disrespect for the laws of the United States. The United States has already put Alibaba (co-company of AliExpress) on a list of "Notorious Counterfeit Goods Market" to which co-conspirator Fran Calista is helping

← Is this **Report about YOU** listed on other sites? **Those sites steal Ripoff Report's content.** We can get those removed for you! Find out more here.

**How to fix Ripoff Report**

If your business is willing to make a commitment to customer satisfaction **Click here now..**



Bengali Heed this warning about Shohrab Chowdhury. He misrepresents skills, says he is in US, but is in other countries, opens backdoors in software

Victoria Pressly AKA Victoria Talbot? SCAM - promised PR

Rusty's Rod Shop Rusty Grindle Criminal activity and thousands in damages to my 6 figure truck build. Certified letter and estimate as proof as Rusty is great at lying just as he did from the start from my truck to his home. We have filed criminal charges Cleveland Georgia

ENDBAR FOUNDATIONS INC efi demolition equipment. Endbar Foundations Screwed me out of $2000 on the 1st job and $29,970 on the 2nd Job over 10 Months of work gone. De Ruyter New York



Progressive RV insurance Blowing me off. RV involved in hail storm , my RV roof started to leak progressive RV insurance is trying to play the blame game

Kalyan Pathuri Scamming Experiences Over Years - Investment scam is the elephant in the room that everyone is aware of yet doesn't acknowledge in the open, and that is the very act that every investment scammer out there takes advantage of. Rockville MD

Tervana Car collection Bought a car...or so I thought. I have a loan for a $30,000 car, yet I have no car, "I have been completely ripped off." the General manager said Hollywood Florida

**How To Feature Your Report Like Above >>**

Pools From $399 Get Quote

**Featured Reports**

**URL**
https://www.ripoffreport.com/reports/fran-calista/internet/fran-calista-fran-calista-is-a-criminal-running-organized-cyber-crimes-that-includes-wire-1393151

**Timestamp**
Thu Apr 10 2025 11:28:20 GMT-0700 (Pacific Daylight Time)



hidden links (screenshots provided) and/or boldly promotes the sale of counterfeit branded items from these "**Trusted Sellers**" of AliExpress to sell to group members.

As an affiliate of AliExpress is a alleged that Fran Calista and her crime organization are grossing well over $50K per month for their illegal activity, fraud, crimes and blatant disrespect for the laws of the United States. The United States has already put Alibaba (co-company of AliExpress) on a list of "Notorious Counterfeit Goods Market" to which co-conspirator Fran Calista is helping Chinese sellers of AliExpress to continue to promote, facilitate and financially benefit from this illegal activity.

All sellers that have worked with Fran Calista and her groups have been compiled and listed with evidence to be reported to AliExpress and the FBI. Fran Calista and her organization of counterfeiting crimes have been reported to the Federal Bureau of Investigation, with substantial evidence and proven illegal activity. All her earning, messages and illegal group activity have been watched, monitored and offered as evidence against her.

Don't be surprised if you see Fran Calista and her cyber-crimes on an upcoming episode of American Greed. Even if she deleted everything (which she will try), she has mounds of evidence stacked against her. When she falls, she is going to fall hard. The United States doesn't take lightly to making money the fraudulent way while Ripping Off legitimate companies and people. What she is doing is illegal and a crime, plain and simple. Right is Right and Wrong is Wrong!

**Report Attachments:**

This report was posted on Ripoff Report on 08/16/2017 09:35 AM and is a permanent record located here: https://www.ripoffreport.com/reports/fran-calista/internet/fran-calista-fran-calista-is-a-criminal-running-organized-cyber-crimes-that-includes-wire-1393151. The posting time indicated is Arizona local time. Arizona does not observe daylight savings so the post time may be Mountain or Pacific depending on the time of year. Ripoff Report has an exclusive license to this report. It may not be copied without the written permission of Ripoff Report. READ: Foreign websites steal our content

Click Here to read other Ripoff Reports on Fran Calista

**Search for additional reports**
If you would like to see more Rip-off Reports on this company/individual, search here:

Fran Calista | Search |

## Report & Rebuttal

**Respond to this report!**    **Also a victim?**    **Repair Your Reputation!**

File a Rebuttal        File a Report        Get Started

**Updates & Rebuttals**

REBUTTALS & REPLIES:
0 Author   1 Consumer   0 Employee/Owner

Pools From $399 — Get Quote — BLUE WORLD POOLS — Ripoff Report verified

**Featured Reports**

Patsy Ward Hollywood Public Defender Patsy Ward is railroading a disabled autistic child to prison Los Angeles California

Regal Keto Shark Tank Regal Keto Diet Pills Reviews This weight is usually regained quickly once you go off the cleanse. Overall, there is little evidence that detox diets help eliminate any of these compounds. Ferndale WA

Spectrum Cable Spectrum Came into my home, damaged my PC and leaves me screwed. Their product sucks.

Chase Geiser Cube Advertising LLC The American Report Podcast Complete scam artist that uses the seller platform Fiverr.com to help him rip off hard working people for thousands of dollars. He is a liar and a total joke. Austin Texas

AMC LLC PROPERTY MANAGEMENT MATT GOELZE IS A LIAR AND A THIEF REFUSING TO GIVE ME BACK MY RENTAL DEPOSIT Salt Lake City Utah

Tactical USA login.tacticalusa.com Failed to deliver on all promised goods and services Boston MA

Priority Wrecker Service BEWARE OF CASH ONLY SCAMMING TOWING COMPANY. THEY CHARGE $75 PER MILE AND THEY TAKE CASH ONLY THE

Matson Kelley - Attorney at law robbed my family of our three homes, by abusing their court appointed positions. Wailuku, Hawai'i

Becky Sara
instagram account is fake and took 400 dollars from me and they're a fake page Internet

PayPal -
took money from debit card and refused to give back. They are also holding $2,000 for months. Internet

FAST & FREE DELIVERY
Sydney
Emart Will not refund my money Internet

Montway
Auto Transport Do nothing, but take your money Schaumburg IL

Emelia Hartford Inform me of a fake contest Los Angeles California

Jason Tilley
Reckless and Dangerous Behavior Endangering Lives Colorado Springs CO

Richard
Manuel Fierro Borrowed $50,000 Never Returned Colorado Springs CO

All Web
Referrals Did not deliver the quantity or the quality of live transfer leads that were

**URL**
https://www.ripoffreport.com/reports/fran-calista/internet/fran-calista-fran-calista-is-a-criminal-running-organized-cyber-crimes-that-includes-wire-1393151

**Timestamp**
Thu Apr 10 2025 11:28:20 GMT-0700 (Pacific Daylight Time)



**URL**

https://www.ripoffreport.com/reports/fran-calista/internet/fran-calista-fran-calista-is-a-criminal-running-organized-cyber-crimes-that-includes-wire-1393151

**Timestamp**

Thu Apr 10 2025 11:28:20 GMT-0700 (Pacific Daylight Time)










**URL**

https://www.ripoffreport.com/reports/fran-calista/internet/fran-calista-fran-calista-is-a-criminal-running-organized-cyber-crimes-that-includes-wire-1393151

**Timestamp**

Thu Apr 10 2025 11:28:20 GMT-0700 (Pacific Daylight Time)

Cyber Attacks & Content removal scheme against Ripoff Report

**Ripoff Report Investigates**



Drug Rehab Deception Addiction Treatment Industry Rocked By Fraud & Abuse. Patients made into prostitutes and sex slaves. bilking insurance companies out of millions

Sac County Iowa Prosecutor Ben Smith pays $750,000 to settle Ripoff Report 1983 civil rights lawsuit. Federal Judge stops prosecutors abuse of power against ED Magedson Founder of Ripoff Report

**Ripoff Report**

Bogus Celebrity Advertisements FACE & Skin CREAM Ripoff! Don't click on those slick Ads!



Phony Ad using Ellen DeGeneres & hundreds of other A-list Stars.

Celebrity Skin Cream wrinkle cream rip-off advertisements US Based and Foreign companies bilked consumers out of Hundreds of Millions of dollars over the past 7 years

WHAT IS YOUR STORY? ARE YOU A VICTIM? FORMER EMPLOYEE?

WE WANT TO HEAR IT! Contact Our Team Now! CLICK HERE

What the BBB has done to consumers for over 100 years is one of the many reasons why Ripoff Report was created.

Better Business Bureau What Consumers need to know

**URL**

https://www.ripoffreport.com/reports/fran-calista/internet/fran-calista-fran-calista-is-a-criminal-running-organized-cyber-crimes-that-includes-wire-1393151

**Timestamp**

Thu Apr 10 2025 11:28:20 GMT-0700 (Pacific Daylight Time)

CLICK HERE

What the BBB has done to consumers for over 100 years is one of the many reasons why Ripoff Report was created.

Better Business Bureau
What Consumers need to know



Terror Group Gets 'A' Rating From Better Business Bureau?

2020 exposes the real BBB

**In The Media**



Ripoff Report on CBS 19

Ripoff Report on CBS 19 - Global Marketing Alliance



Ripoff Report on ABC 15 - Smart Shopper

Ripoff Report - Girls Gone Wild

Ripoff Report on Fox 11 - Car Repair

See more videos

**We Need Your Help!**

Learn More Here
**Donate**





Ripoff Report is Xcentric Ventures

---

**Ripoff Report**

| Home  | File a Report  | Consumer Resources  | Search  | Top Trends  | Link to Ripoff Report  | Customer Support for Technical Issues
| Privacy Policy  | Terms of Service  | General Questions and Suggestions  | Why Ripoff Report will not release author information!
| Thank You Emails!  | Corporate Advocacy Program: How to repair your business reputation.  | Ed Magedson - Ripoff Report Founder
| Want to sue Ripoff Report?  | Donate to our Efforts  | BadBusinessBureau.com  | Media Requests  | FAQ  | About Us  | Contact Us

Copyright © 1997-2025, Ripoff Report. All rights reserved.

click here
to order
today!

**Ripoff Report**

**URL**

https://www.ripoffreport.com/reports/fran-calista/internet/fran-calista-is-a-criminal-running-organized-cyber-crimes-that-includes-wire-1393151

**Timestamp**

Thu Apr 10 2025 11:28:20 GMT-0700 (Pacific Daylight Time)

| Home | File a Report | Consumer Resources | Search | Top Trends | Link to Ripoff Report | Customer Support for Technical Issues |

| Privacy Policy | Terms of Service | General Questions and Suggestions | Why Ripoff Report will not release author information! |

| Thank You Emails! | Corporate Advocacy Program: How to repair your business reputation. | Ed Magedson - Ripoff Report Founder |

| Want to sue Ripoff Report? | Donate to our Efforts | BadBusinessBureau.com | Media Requests | FAQ | About Us | Contact Us |

Copyright © 1997-2025, Ripoff Report. All rights reserved.

**URL**

https://www.ripoffreport.com/reports/fran-calista/internet/fran-calista-fran-calista-is-a-criminal-running-organized-cyber-crimes-that-includes-wire-1393151

**Timestamp**

Thu Apr 10 2025 11:28:20 GMT-0700 (Pacific Daylight Time)